UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAJESH KUMAR MALIK, | ) | CASE NO. 5:24-CV-01997 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES SCHWAB & CO., INC., | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant Charles Schwab & Co., Inc.'s ("Defendant" or "Schwab") Motion to Dismiss, or Alternatively, to Stay Proceedings and Compel Arbitration.  (Doc. 5.)  *Pro se* Plaintiff Rajesh Kumar Malik ("Plaintiff" or "Malik") has not opposed the motion.  For the reasons below, the motion is GRANTED in part and DENIED in part.

**I.    BACKGROUND**

   **A.    Factual Allegations**

In 2009, Malik opened an investment account with TD Ameritrade.  (Doc. 1 at 1.)[1]  In 2020, Schwab acquired TD Ameritrade.  (*Id.*)  As part of the acquisition, Schwab transferred all TD Ameritrade accounts into Schwab accounts.  (*Id.*)  Before Schwab did so, it informed customers of the transition and that the transition included acceptance of an account agreement with Schwab (the "Account Agreement").  (Doc. 5-1 at 18.)  The communication also informed customers of opt-out procedures if a customer did not consent to the new Account Agreement.  (*Id.*)  In June 2023, Schwab communicated with Malik regarding the transition, new Account

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

Agreement, and opt-out procedures. (Doc. 5-2 at 31-32.) Malik did not change his TD Ameritrade account nor opt-out of any new agreement. (*Id.* at 32.) Schwab transferred Malik's account in September 2023. (Doc. 1 at 1.) All former TD Ameritrade accounts became subject to the Account Agreement, which contained the following arbitration provision:

> Arbitration Agreement. Any controversy or claim arising out of or relating to (i) this Agreement, any other agreement with Schwab, an instruction or authorization provided to Schwab or the breach of any such agreements, instructions, or authorizations; (ii) the Account, any other Schwab account or Services; (iii) transactions in the Account or any other Schwab account; (iv) or in any way arising from the relationship with Schwab, its parent, subsidiaries, affiliates, officers, directors, employees, agents or service providers ("Related Third Parties"), including any controversy over the arbitrability of a dispute, will be settled by arbitration.

(Doc. 5-7 at 72.)

In March 2024, Malik contacted Schwab customer service because Schwab flagged his account. (Doc. 1 at 1.) Malik alleges a Schwab representative told him his account fell below the minimum maintenance requirement. (*Id.* at 1-2.) Malik transferred funds from another bank to fulfill the minimum maintenance requirement. (*Id.* at 2.) Later that same day, Malik alleges his Schwab account was again flagged because he did not meet the minimum maintenance requirement. (*Id.*) Malik spoke with another Schwab representative which told him he still did not meet the minimum maintenance requirement. (*Id.*) Malik transferred more funds into the Schwab account which required him to close certain stock positions resulting in losses. (*Id.*) However, Malik alleges his account never fell below the minimum maintenance requirement and the resulting transfers caused him financial harm. (*Id.* at 2-3.)

**B.     Procedural History**

On November 14, 2024, Malik filed his complaint alleging three causes of action: violations of 18 U.S.C. § 1341 (fraud); violations of 18 U.S.C. § 242 (deprivation of rights); and

violations 18 U.S.C. § 241 (conspiracy). (Doc. 1.) On January 13, 2025, Schwab moved to dismiss or stay and compel arbitration. (Doc. 5.) Malik has not opposed the motion.

The Court may interpret the absence of a response to a motion to dismiss as a waiver of opposition. *Ray v. United States*, No. 11-CR-115-HSM-CHS-1, 16-CV-141, 2017 WL 2350095, 2017 U.S. Dist. LEXIS 81787, at *3 (E.D. Tenn. May 30, 2017) (citing *Notredan, LLC v. Old Republic Exch. Facilitator Co.*, 531 F. App'x. 567, 569 (6th Cir. 2013) (explaining that failure to respond to or otherwise oppose a motion to dismiss operates as both a waiver of opposition to, and an independent basis for, granting the unopposed motion)); *Demsey v. R.J. Reynolds Tobacco Co.*, No. 04-CV-1942, 2005 WL 1917934, 2005 U.S. Dist. LEXIS 43339, at *5 (N.D. Ohio Aug. 10, 2005) ("The court's authority to grant a motion to dismiss because it is unopposed is well established."); *see also Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x. 328, 331 (6th Cir. 2008) ("Thus, where, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived."). Because Malik has not responded to Schwab's motion to dismiss, he has waived his opposition. Though the Court may—and does—interpret the absence of a response to the motion as an independent basis for granting it, the Court nonetheless considers the merits of Schwab's motion nonetheless.

**II.      LEGAL STANDARD**

The Federal Arbitration Act ("FAA") provides arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (quoting 9 U.S.C. § 2). In reviewing a motion to compel arbitration, courts engage in a limited two-step review. *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003). In

step one, a court must decide whether there is a valid contract to arbitrate between the parties. *Id.* (citation omitted). For step two, the courts must determine whether the parties' dispute falls within the arbitration agreement's scope. *Id.*

There is a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Motions to compel arbitration are treated like motions for summary judgment. *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). Courts may consider both the pleadings and additional evidence submitted by the parties and view all facts and inferences in the light most favorable to the nonmoving party. *Id.* "The burden is on the party opposing arbitration to show that the agreement is not enforceable." *Townsend v. Stand Up Mgmt.*, No. 18-cv-2884, 2019 WL 3729266, at *2, 2019 U.S. Dist. LEXIS 133635, at *6 (N.D. Ohio Aug. 8, 2022) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)). To meet this burden, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth*, 288 F.3d at 889.

### III. LAW AND ANALYSIS

#### A. Agreement to Arbitrate

Before a court can compel parties to arbitration, it "must first determine that a valid agreement to arbitrate exists." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003) (citing 9 U.S.C. § 2). To determine if a valid agreement to arbitrate exists, courts apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *see Morrison v. Circuit City Stores*, 317 F.3d 646, 666 (6th Cir. 2003) (courts "review enforceability of an

arbitration agreement according to the applicable state law of contract formation"). Under Ohio law,[2] "[a] contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Rayess v. Educ. Comm. for Foreign Med. Graduates*, 983 N.E.2d 1267, 1271 (Ohio 2012) (quoting *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002)).

Here, Schwab informed Malik of the account transition and informed Malik of the new account agreement and the procedures for opting out of the agreement. (Doc. 2 at 32-33; Doc. 5-5; Doc. 5-6.) Malik did not opt-out, and instead, continued using his new account with Schwab, thereby accepting the Account Agreement. (Doc. 5-2 at 32.) Malik never informed Schwab of an intent to opt-out. Thus, the essential elements of a contract under Ohio law are met. The Sixth Circuit has upheld arbitration agreements where a party understood their obligation to opt out or not participate and the party fails to take the required action to opt out. *Legair v. Circuit City Stores, Inc.*, 213 F. App'x 436, 439 (6th Cir. 2007).

Malik does not contest his Account Agreement contains a valid and enforceable agreement to arbitrate under Ohio law, and therefore, has not met his burden of showing the agreement is not enforceable. In any event, Schwab has adequately demonstrated the validity of the arbitration provision.

  B. **Scope of Arbitration Agreement**

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l*

---

[2] Schwab argues the arbitration agreement is valid under Ohio law. For the purposes of this Order, the Court assumes Ohio law applies.

*Hosp.*, 460 U.S. at 24-25.  When a valid agreement to arbitration exits, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *see also Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003) ("[O]nly an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.").  At the same time, "arbitration remains a matter of contract, and a party cannot be required to submit to arbitration in any dispute which he has not agreed so to submit." *AT&T Techs.*, 475 U.S. at 648.

Here, the arbitration provision covers: "[a]ny controversy or claim arising out of or relating to (i) this Agreement, any other agreement with Schwab, an instruction or authorization provided to Schwab or the breach of any such agreements, instructions, or authorizations; (ii) the Account, any other Schwab account or Services; (iii) transactions in the Account or any other Schwab account; (iv) or in any way arising from the relationship with Schwab[.]"  (Doc. 5-7 at 52.)

Malik's claims all involve activity relating to his account and communications with Schwab representatives.  These allegations are specifically covered by the arbitration provision because they relate to "the Account [or] any other Schwab account or Services" and "transactions in the Account or any other Schwab account."  Malik, by virtue of not opposing, does not argue otherwise.

    **C.**    **Stay**

Having found "a valid contract to arbitrate" and that "the parties' dispute falls within the

arbitration agreement's scope," the matter must be compelled to arbitration.  *Glazer*, 394 F.3d at 451 (citing 9 U.S.C. § 3).  Schwab asks the Court to dismiss the case, or, in the alternative, compel arbitration and issue a stay.  (Doc. 5-1 at 17.)  Malik has not responded to either request.  Where one party requests a stay, § 3 requires the district court to stay the matter.  *Smith v. Spizzirri*, 601 U.S. 472, 144 S.Ct. 1173, 218 L.Ed.2d 494 (2024) (requiring a district court stay, and not dismiss, and action where a party requests a stay pursuant to § 3).  In the case where no party requests a stay, the Sixth Circuit has held a district court can dismiss or stay the matter.  *See Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 519 (6th Cir. 2017) (upholding dismissal of matter where no party requested a stay pursuant to § 3).  In general, the Sixth Circuit has stated the preferred approach is a stay pending arbitration.  *See Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 942-43 (6th Cir. 2021) ("Because a dismissal, unlike a stay, permits an objecting party to file an immediate appeal, a district court dismissal order undercuts the pro-arbitration appellate-review provisions of the Act.").  Because the "ordinary course" is to stay the matter pending arbitration, the Court GRANTS Defendants' request compel the matter to arbitration and STAYS this case pending resolution of the arbitration.

### IV.     CONCLUSION

For the reasons stated above, Defendant Charles Schwab & Co., Inc's Motion to Dismiss, or Alternatively, to Stay Proceedings and Compel Arbitration (Doc. 5) is GRANTED in part and DENIED in part.

The parties are ORDERED to file a joint status report regarding the status of arbitration within ninety (90) days of this Order.  If Plaintiff has not initiated arbitration within ninety (90) days of this Order, the Court may dismiss this matter with prejudice for failure to prosecute.  If arbitration proceeds, Plaintiff is ORDERED to file a notice with the Court within ten (10) days

of the arbitration proceeding becoming final indicating if the matter is to proceed or if the matter is to be dismissed.  The failure to timely file such a notice with the Court may result in dismissal of this action with prejudice for failure to prosecute.

    **IT IS SO ORDERED.**

Date:   August 7, 2025

                                                      BRIDGET MEEHAN BRENNAN
                                                    UNITED STATES DISTRICT JUDGE